UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELA LUND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-00449-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Pamela Lund was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 16), and in Defendant's Statement of Additional Facts (ECF No. 19-2), as supplemented by Plaintiff (ECF No. 20-1). Together, these statements provide a fair description of the record before the Court. Specific facts will

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

be discussed as needed to address the parties' arguments.

Plaintiff, who was born on July 17, 1956, protectively filed her application for benefits on July 12, 2017. She alleged disability beginning August 1, 2016, due to a series of physical impairments. Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on February 27, 2019. Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. By decision dated April 22, 2019, the ALJ found that Plaintiff had the severe impairments of obesity and spondylosis of the lumbar spine. The ALJ also addressed Plaintiff's other medically determinable impairments, including Plaintiff's mental impairments and her collagenous colitis, and the ALJ explained why these impairments were not "severe" under the Commissioner's regulations.

In explaining why Plaintiff's mental impairments were not severe under the regulations, the ALJ noted that he considered the four areas of mental functioning set out in the Commissioner's regulations for evaluating mental disorders, also known as the "paragraph B" criteria. Relying on Plaintiff's function reports and the medical evidence of record, the ALJ found that Plaintiff had "mild" limitations in two areas of mental functioning: understanding remembering, or applying information, and concentrating, persisting, or maintaining pace. The ALJ found that Plaintiff had no limitations in the other two areas of mental functioning: interacting with others and adapting or managing

oneself.

Because the ALJ found that Plaintiff's medically determinable mental impairment caused no more than "mild" limitations in any of the functional areas, the ALJ concluded that Plaintiff's mental impairment was non-severe. The ALJ noted that the limitations at this step of the analysis (determining the severity of impairments) were "not a residual functional capacity [RFC] assessment," but that the RFC assessment described later in her opinion "reflect[ed] the degree of limitation the [ALJ] ha[d] found in the 'paragraph B' mental function analysis." Tr. 15.

The ALJ concluded that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations. Next, the ALJ found that Plaintiff had the RFC to perform less than the full range of "sedentary, semi-skilled" work, as defined by the Commissioner's regulations, in that she has:

> the ability to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; sit 6 hours of an 8-hour workday; and stand/walk 2 hours; but she is restricted to frequent pushing and pulling with the left dominant upper extremity. She is unable to climb ladders, ropes, or scaffolds; she is able to occasionally climb ramps and stairs; and she is limited to occasional balancing, stooping, kneeling, and crouching with no crawling. She is able to tolerate only occasional exposure to pulmonary irritants including dusts, fumes, odors, gases, and poorly ventilated areas. She must also avoid exposure to unprotected heights.

Tr. 16.

Relying on the VE's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ next found that

3

Plaintiff remained able to perform her past relevant work as a dispatcher, both as she actually performed that job and as it is generally performed in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on January 27, 2020. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that: (1) the ALJ failed to properly evaluate the RFC by failing to include any mental limitations, despite finding that Plaintiff had mild limitations in two areas of mental functioning; (2) the ALJ erred by finding that Plaintiff can perform her past relevant work as a dispatcher as actually or generally performed; and (3) the ALJ erred by substituting her lay judgment for the medical opinions of record. Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court

"must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). As noted above, a special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding,

5

remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Consistency in the Sequential Analysis**

Plaintiff argues that the ALJ's decision is internally inconsistent because the ALJ's RFC finding and related hypothetical question to the VE did not account for the mild limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace that the ALJ found in her analysis at step three of the sequential evaluation process.

The claimant in *Chismarich v. Berryhill*, 888 F.3d 978 (8th Cir. 2018) made a

similar argument, namely, that the special technique "for the assessment of alleged mental impairments in the analysis of severity, 20 C.F.R. § 404.1520a, must be consistent with the ALJ's [RFC] determinations." 888 F.3d at 979–80. The Eighth Circuit held that, while "[a]s a general proposition, this assertion is . . . correct[,] [a]s a practical matter . . . the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Id.* at 980; *see also Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.").

"An ALJ's RFC determination requires a more detailed assessment than the special technique provides, and indeed is a 'multidimensional description' that represents 'the most that an individual can do despite his or her limitations or restrictions.'" *Chismarich v. Berryhill*, No. 4:15CV1575 CDP, 2017 WL 476408, at *4 (E.D. Mo. Feb. 6, 2017), *aff'd,* 888 F.3d 978 (8th Cir. 2018). Here, the ALJ's detailed RFC assessment is not inconsistent with her findings in the earlier steps of the analysis.

This is because, contrary to Plaintiff's assertion, the ALJ did not ignore the mental functional limitations found at step two or three when she assessed Plaintiff's RFC. Rather, the ALJ discussed at length the evidence related to Plaintiff's mental impairments and concluded that Plaintiff's minimal mental restrictions did not support a functional limitation in the RFC. Specifically, the ALJ noted that the record reflected Plaintiff's reports of anxiety were not based on her underlying job duties as a dispatcher in general

7

but, rather, specifics regarding her supervisor and stress at home. Moreover, Plaintiff's mental status examinations were generally normal and did not reflect significant mental health treatment. Tr. 20.

The ALJ specifically discussed Plaintiff's treatment records and found that they were inconsistent with her allegations of "symptoms so severe that she would be off task or absent from work to a degree not tolerated by employers." Tr. 20. The ALJ further noted that Plaintiff's treatment records "did not reflect reports or findings of anxiety that would interfere with attention and concentration or limit her to 'low stress jobs.'" Tr. 21. The ALJ concluded by finding that "the [record] is relatively limited in the documented abnormalities and does not support greater limitations than the extensive limitations set forth in the established residual functional capacity," and that "[f]indings on examination have been mostly mild or benign, and even the claimant's subjective complaints to her own doctors do not reflect a frequency or severity of symptoms that would support further restrictions in the [RFC]." Tr. 21.

Those reasons, in light of the record as a whole, provide substantial evidence supporting the ALJ's decision not to include mental limitations in the RFC, as well as the ALJ's ultimate conclusion, based on the VE's testimony, that Plaintiff is not disabled. *See, e.g.*, *Candice A. Z. v. Kijakazi*, No. 19 C 8174, 2021 WL 3187783, at *7 (N.D. Ill. July 28, 2021) ("By discussing the evidence related to [the claimant's mental health history and concluding that her limitations were not as severe as [the claimant] alleged, the ALJ adequately considered her only minimal mental restrictions but determined that

8

they did not support a functional limitation in the RFC."); *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *6 (N.D. Tex. Jan. 11, 2016) *5-6 (holding that "the ALJ sufficiently considered [the claimant's] mental impairments in calculating the RFC, and did not err by not including any mental limitations in the RFC," notwithstanding finding mild limitations in a few areas of functioning at steps two and three, where the ALJ considered relevant mental health records, reports, and the claimant's testimony regarding his mental impairments), *but cf. Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (remanding where the ALJ wholly failed to explain the evidentiary basis for excluding mental limitations in the RFC). Although the record could also support a different conclusion, the Court cannot say that the ALJ's decision was outside the zone of choice.

**Past Relevant Work**

In her second argument, Plaintiff highlights the ALJ's finding that Plaintiff's anxiety stemmed from involvement "with specific colleagues and co-workers, not from the underlying job duties of a 911 dispatcher." Tr. 15, 20. In connection with this finding, the ALJ relied on Plaintiff's testimony at the evidentiary hearing that her stress resulted from having to fill in for her supervisor when the supervisor took improper breaks and Plaintiff's belief that she was not qualified to fill in for the supervisor role. Tr. 15, 46-48. Plaintiff argues that these findings essentially "eliminate [her past relevant work] as actually performed" by Plaintiff. ECF No. 14 at 9.

Plaintiff further highlights the ALJ's discussion of Plaintiff's hearing testimony

9

that she performed some part-time work as a dispatcher after her alleged disability onset date, but "she found it stressful when she discovered that the computer system had been updated and she had not been trained on the new system" (Tr. 15, 58). Plaintiff argues that "[i]n order to determine if [Plaintiff] retained the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy, the ALJ was required to develop the record with respect to the type of computer system [Plaintiff] was trained to use and whether this is the type of system generally used in the national economy." ECF No. 14 at 10.

The Court rejects Plaintiff's argument. If a claimant "can perform her past relevant work, *either* as she actually performed it *or* as the position is generally performed in the national economy, then she is not 'disabled' within the meaning of the Act." *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019) (emphasis added) (citing 20 C.F.R. §§ 404.1520(f), 404.1560(b), 416.920(f), 416.960(b)); *see also Martin v. Sullivan,* 901 F.2d 650, 652–53 (8th Cir.1990) (explaining that the test under the statute is "clearly meant to be disjunctive" and "[i]f the claimant is found to satisfy either test, then a finding of not disabled is appropriate").

Thus, whether Plaintiff was able to perform certain supervisory duties beyond the normal duties of a dispatcher is irrelevant. *See Sloan*, 933 F.3d at 950 (noting that an inability to perform "functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy . . . does not render a claimant disabled under the Act"). Regardless of whether Plaintiff

10

could perform her past relevant work as she actually performed it, substantial evidence supported the ALJ's finding that Plaintiff could perform that work as it is generally performed in the national economy.

In determining whether Plaintiff could return to her past relevant work as generally performed, the ALJ considered the testimony of a VE, consistent with the *Dictionary of Occupational Titles* ("DOT"). The VE testified that Plaintiff's past relevant work was classified as a dispatcher, a sedentary, semi-skilled job under the DOT. The VE further testified that a hypothetical person with Plaintiff's specific RFC could perform this job, both as Plaintiff actually performed it and as generally performed. Tr. 65. The VE's testimony provides substantial evidence supporting the ALJ's determination that Plaintiff could perform her past relevant work as that job is generally performed in the national economy. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1013 (8th Cir. 2019) (holding that a VE's answer to a properly phrased hypothetical supplies substantial evidence supporting a determination that a claimant can perform past relevant work).

Plaintiff's additional argument, that the ALJ was required to develop the record with respect to the particular computer systems used by other employers in the national economy, is unsupported by the facts and the law. The record does not support a finding that Plaintiff's situational stress related to lack of familiarity with a particular computer system was so severe as to render her unable to perform the dispatcher job as that job is generally performed in the national economy. And while the ALJ does have a duty to

11

fully and fairly develop the record, the ALJ is not required to obtain additional evidence if the evidence of record provides a sufficient basis for the ALJ's decision. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

The record here provided a more than sufficient basis for the ALJ to make an informed determination regarding Plaintiff's capacity to perform her past relevant work. This evidence included Plaintiff's disability, function, and work background reports; medical records from before and throughout the relevant period that reflected routinely normal mental status examinations and conservative treatment history; Plaintiff's testimony at the evidentiary hearing, at which Plaintiff was represented by counsel; and the VE's testimony. It is ultimately Plaintiff's burden to establish her disability, and she failed to carry that burden here.

**Medical Opinion Evidence**

Finally, Plaintiff argues that the ALJ erred in substituting her lay judgment for the medical opinions of Plaintiff's treating physician, Paul Moniz, M.D., and the agency psychologist, J. Edd Bucklew, Ph.D., specifically with regard to Plaintiff's need for breaks due to ulcerative colitis and to Plaintiff's mild limitations in certain mental domains.

Plaintiff incorrectly suggests that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses her specific functional

limitations.   Although the RFC is a medical question and must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Instead, the RFC must be determined by the ALJ based on all the relevant evidence.

The ALJ properly evaluated the medical opinions here, along with all of the relevant medical evidence, pursuant the new regulations applicable to Plaintiff's claim.  *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted).

The ALJ gave good reasons for discounting some—but not all—of the limitations set forth in Dr. Moniz's and Dr. Bucklew's opinions, including that they were inconsistent with Plaintiff's function reports and her treatment records, which reflected consistently normal physical and mental examination findings, few complaints of bowel problems, and conservative physical and mental treatment history.

It was the ALJ's job to resolve these conflicts, and the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole.

13

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 10th day of August, 2021.

14